UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-27(DSD/JMM)

Pool Concepts, Inc., d/b/a
Pool & Spa Concepts, a
Minnesota corporation,

Plaintiff,

v.

**ORDER**

Watkins, Inc., d/b/a
Caldera Spas, a
California corporation,

Defendant.

Ronald K. Gardner, Esq., John D. Holland, Esq., and Dady & Garner, P.A., 4000 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiff.

David N. Lutz, Esq., Nicole M. Churchya, Esq., and Bowman and Brooke, L.L.P., 150 South Fifth Street, Suite 2600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on plaintiff's motion for a preliminary injunction. Based upon all the files, records and proceedings herein, plaintiff's motion is granted.

**BACKGROUND**

Plaintiff Pool Concepts, Inc., d/b/a Pool and Spa Concepts ("PSC"), a Minnesota corporation, is a franchise dealer of Caldera products and has been since January 4, 1996. Plaintiff claims that, based on custom and practice, it expected to continue as a

FILED 1-29-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

franchised dealer of Caldera products so long as it adequately performed and that if at any time Caldera believed PSC was not performing adequately, PSC would be given notice and a reasonable opportunity to cure that deficiency prior to being terminated. Watkins, Inc., d/b/a Caldera Spas, a California corporation, has manufactured Caldera products since it purchased Caldera from Custom Fiber Engineering. Watkins assumed all of the obligations and liabilities of Custom Engineering as a result of this acquisition. Watkins now threatens to terminate its relationship with PSC and PSC moves for preliminary injunction. The court grants plaintiff's motion.

**DISCUSSION**

In evaluating a motion for a preliminary injunction, the court considers the four factors that the Eighth Circuit set forth in Dataphase Sys., Inc. v. CL Sys., Inc.: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and the harm that the relief would cause to the other litigants; (3) the likelihood of the movant's success on the merits; and (4) the public interest. 640 F.2d 109, 112-114 (8th Cir. 1981). The court weighs these four factors to determine whether injunctive relief is warranted. See id. at 113; West Publ'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986).

Usually, none of these factors is determinative; rather, the court balances the four factors to determine whether a preliminary injunction is warranted. Id. The plaintiff bears the burden concerning the four factors. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). Here, the court finds that PSC has met its burden on all four factors and grants plaintiff's motion for a preliminary injunction.

**A. The Threat of Irreparable Harm to the Movant in the Absence of Relief**

When a franchisee is seeking to enjoin a franchisor from acting in a manner that might be inconsistent with the Minnesota Franchise Act, then irreparable harm to the franchisee may be presumed "[i]f the agreement is governed by the Franchise Act...." Unlimited Horizon Mktg., Inc. v. Precision Hub, Inc., 533 N.W.2d 63, 66 (Minn. Ct. App. 1995)(citations omitted). Because the court finds that plaintiff is entitled to the protections of the Minnesota Franchise Act ("Act"), irreparable harm is presumed.[1]

**1. The Minnesota Franchise Act**

The Act defines a franchise as a contract

> (i) by which a franchise is granted the right to engage in the business of offering or

[1] Neither party appears to dispute that the Minnesota Franchise Act, rather than California's franchise statute, applies in this case. The court applies the Minnesota Franchise Act. See Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 858 F.2d 1339, 1344 (8th Cir. 1988)(holding a contract's choice of law provision void and applying Minnesota law, specifically the Minnesota Franchise Act.)

> distributing goods or services using the franchisor's trade name, trademark, service mark, logotype, advertising, or other commercial symbol...;
>
> (ii) in which the franchisor and franchisee have a comunity of interest in the marketing of goods or services...; and
>
> (iii) for which the franchisee pays, directly or indirectly, a franchise fee.

Minn. Stat. Ann. § 80C.01, Subd. 4(a)(3)(West 2001). Here, neither party disputes that the agreement between the parties entitles plaintiff to hold itself out as an authorized dealer of Caldera products or that the parties share a community of interest. The critical dispute in this matter is whether plaintiff paid defendant a franchise fee.

The Act defines a "franchise fee" as "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business..." Minn. Stat. Ann. § 80C.01, Subd. 9. The Act provides several exceptions to the definition of a franchise fee, including the following: (1) "[t]he purchase of goods or agreement to purchase goods at a bona fide wholesale price;" (2) "[t]he purchase, at their fair market value, of supplies or fixtures or agreement to so purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement;" and (3) "[t]he purchase or lease, at the fair market value, of real property or agreement to so purchase or lease real property necessary to enter into the

business or to continue the business under the franchise agreement." Id. The statute therefore makes it clear that the payment of any fee by the franchisee to the franchisor constitutes a franchise fee unless it meets one of the enunciated exceptions.

Plaintiff asserts that it paid defendant several franchise fees, including the following: (1) the payment of funds by plaintiff to defendant that are ultimately transferred by defendant into the so-called "co-op" advertising fund, (2) the sales literature that defendant required plaintiff to purchase and (3) the minimum parts inventory that defendant required plaintiff to maintain in excess of plaintiff's desires and/or requirements. The court need not consider whether the sales literature or minimum parts inventory requirement constitute a franchise fee because the court finds that the co-op advertising program is a franchise fee and thus plaintiff is entitled to the protection of the Minnesota Franchise Act.

In Current Tech. Concepts, Inc. v. Irie Enter., Inc., 530 N.W.2d 539 (Minn. 1995), plaintiff paid $125,000 to purchase a software system and, as part of the consideration for the agreement, defendant agreed to enter into a separate agreement with plaintiff allowing plaintiff to participate as a reseller of products for defendant. Id. at 541. The Minnesota District Court certified to the Minnesota Supreme Court the question of whether this transaction constituted a franchise fee. Id. The Minnesota

Supreme Court concluded that the $125,000 constituted a franchise fee because the payment required for the software system also served as consideration for the reseller's agreement. Id. at 543.

Here, as in Current Tech., when plaintiff purchases spas from defendant, it is purchasing the spa and also the ability to participate in the co-op advertising fund that is created as a result of the transaction. The money that defendant collects from plaintiff for spas includes the funds defendant contributes to the co-op fund.[2] Moreover, the payment of funds is not optional, as it is tied to the purchase of spas. Because the money for the co-op fund comes directly from plaintiff, as in Current Tech., this money constitutes a franchise fee.[3] The court therefore concludes

---

[2] While defendant asserts that the money plaintiff pays for the spa is not part of the price of the spa, plaintiff provides persuasive evidence that the money for the co-op fund comes directly from the sale of spas to plaintiff. As evidence that the co-op monies are included in the price that plaintiff is charged for the spa, plaintiff points to Exhibit A of the Erickson Affidavit, which details how the amount of the contribution to the co-op fund is dependant on purchases made by plaintiff. (Erickson Aff., Ex. A.) In Exhibit B of the Erickson Affidavit, defendant advises its dealers that the switch in the co-op collection formula from a flat fee of 2% to the new formula decreases the wholesale price of the spa. (Erickson Aff., Ex. B.) This document therefore conclusively establishes that the cost of the co-op program is built into the price of the spa, thereby creating an indirect franchise fee.

[3] In arguing that the co-op fund does not constitute a franchise fee, defendant relies on The Matterhorn Group, Inc. v. SMH (U.S.) Inc., 2000 WL 1174215 (Bankr. S.D.N.Y. Aug. 17, 2000). The case, however, is distinguishable on procedural grounds because, in that case, the court addressed whether plaintiff's argument could survive a motion to dismiss, not summary judgment.

that plaintiff is entitled to the protection of the Minnesota Franchise Act and that irreparable harm is presumed.

**B. The Balance of Harms**

As stated in plaintiff's motion for a temporary restraining order, plaintiff will suffer more harm if defendant is allowed to terminate its relationship with plaintiff than defendant will suffer if it is ordered to maintain the relationship. Specifically, plaintiff has shown that if its relationship with defendant terminates, then plaintiff immediately will be unable to service and support its customer base. As a result, plaintiff will lose business, customer contacts and good will. Conversely, the court finds that defendant will suffer little irreparable harm if it is ordered to maintain its long-standing relationship with plaintiff. The court therefore concludes that the balance of harm weighs in plaintiff's favor. See Modern Computer Sys., 858 F.2d at 1345 (balance of harms favors issuance of preliminary injunction where, under Minnesota Franchise Act, injunctive relief was distributors sole remedy and where termination of distributorship would result in loss of sales and good will.)

**C. Probability of Success on the Merits**

Because plaintiff is entitled to the protections of the Minnesota Franchise Act, plaintiff has demonstrated that it will probably succeed on the merits. In particular, plaintiff has illustrated that it is a franchisee and that the termination has

been undertaken in violation of the Minnesota Franchise Act - without good cause and without the franchisor providing notice and a reasonable opportunity to cure any alleged deficiencies as required under Minn. Stat. § 80C.14. See Modern Computer Sys., 858 F.2d at 1344-45 (finding plaintiff likely to succeed on the merits because plaintiff proved that defendant did not provide written notice of termination as required by the Minnesota Franchise Act or notice and opportunity to cure).

**D. Public Policy**

Enforcement of private contracts serves the public interest. Moreover, public policy favors protecting franchise rights, especially those under the Minnesota Franchise Act. Put another way, the public policy of the State of Minnesota is advanced by protecting a franchisee from termination in violation of the Minnesota Franchise Act. See, e.g., Minn. Stat. §80C.14; Modern Computer Sys., 858 F.2d at 1345 ("The public policies embodied in the Franchise Act ... support the award of preliminary relief in this case."). Public policy therefore weighs in favor of granting a preliminary injunction.

**E. Bond**

Under Federal Rule 65(c), the court is required to determine the amount of security that the preliminary injunction movant must give "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully

enjoined." The court concludes that a nominal bond of $2,000 is appropriate in this case.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for a preliminary injunction is granted; and

2. Pursuant to Federal Rule 65(c), this injunction will not take effect until plaintiff posts a bond or provides other security in the amount of $2,000.

Dated: January 29, 2002

David S. Doty, Judge
United States District Court